UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. MICHELE MORISON, | )<br>)<br>) |
| Relator, | )<br>) |
| vs. | 4:15-cv-00094-RLY-DML<br>)<br>) |
| RES-CARE, INC., | )<br>) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Relator/Plaintiff, Michele Morison, is a former employee of Defendant, Res-Care, Inc., which provides social, educational, and vocational services to individuals who are intellectually, physically, and developmentally disabled. After Res-Care terminated Relator's employment, she filed the present lawsuit. In her Second Amended Complaint ("SAC"), Relator alleges that Res-Care violated the False Claims Act (or "FCA"), retaliated against her, wrongfully terminated her, and discriminated against her because of her gender. Res-Care now moves to dismiss the SAC. For the reasons set forth below, its motion is **GRANTED in part** and **DENIED in part**.

**I.    Background**

Relator was hired by Res-Care as a Qualified Intellectual Disabilities Professional ("QIDP") on August 18, 2015. (*See* Relator's SAC ¶ 9). As a QIDP, she prepared developmental and behavioral plans. (*Id.* ¶ 10).

1

On February 25, 2015, Relator attended a staff meeting conducted by Jane Breedlove, the Executive Director. (*Id.* ¶ 13). During this meeting, Breedlove informed the staff that there was a staffing crisis, and Res-Care did not have the necessary staff to perform direct care hours. (*Id.*). This was a problem, Relator alleges, because Res-Care was paid a sum of money in advance to provide a certain amount of hours of direct care to residents. (*Id.* ¶ 12). Breedlove therefore advised the QIDPs to begin recording their time spent on preparing developmental and behavioral plans as direct care hours. (*Id.*). She also directed the QIDPs to backdate this time to reflect direct care in their progress notes for the month of February. (*Id.*). The preparation of developmental and behavioral plans by QIDPs does not qualify as direct care that is reimbursed by Medicaid. (*Id.* ¶ 14).

Relator refused to report her time spent preparing developmental and behavioral plans as direct care hours. (*Id.* ¶ 15). James Newness, another QIDP, also refused, but other QIDPS at Res-Care agreed to do so. (*Id.*). Under this practice, and at least in February 2015, Res-Care falsely submitted claims for Medicaid reimbursement for the alleged performance of direct care hours by QIDPs preparing these plans. (*Id.*).

In the weeks following the February 25, 2015 meeting, Clinical Manager Lindsay Johnson texted Relator asking her to "help with [direct care] hours." (*Id.* ¶ 17). Relator responded that she was not going to do so, and that reporting non-direct care time as direct care time was Medicaid fraud. (*Id.*).

On March 6, 2015, Relator met with Program Manager Kelly Alexander and Human Resources Coordinator Regina Gibson. (*Id.* ¶ 18). Alexander advised Relator that she either had to report her time spent preparing developmental and behavioral plans

2

as time spent providing direct care to residents for Medicaid reimbursement or resign her position. (*Id.*). Relator refused either option, and was terminated. (*Id.*). Newness, who also refused, was not terminated. (*Id.* ¶ 19).

## II. Dismissal Standard

Pursuant to Rule 12(b)(6), a complaint may be dismissed if the plaintiff fails to state a claim upon which relief may be granted. To survive a motion to dismiss, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the complaint's "allegations must plausibly suggest that the Relator has a right to relief, raising that possibility above a 'speculative level.'" *Id*. (quoting *Bell Atlantic*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because the False Claims Act is an anti-fraud statute, claims brought under it must satisfy the heightened pleading requirements of Rule 9(b). *United States ex rel. Gross v. AIDS Research All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Unlike Rule 8, which requires only "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010), Rule 9(b) instructs Relators to "state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). This generally requires the relator to allege the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC,* 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). The Seventh Circuit cautions against taking "an overly rigid view of [this] formulation" because the degree of detail required of a complaint "may vary on the facts of a given case." *Id.* (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)).

## III. Discussion

### A. Federal FCA Claims

Counts I, II, and IV of Relator's SAC assert claims under the FCA. The court will begin its discussion with Count I.

#### 1. Count I, Submission of False or Fraudulent Claims to Medicaid

Count I alleges "Defendant knowingly presented or caused false or fraudulent claims to be submitted to Medicaid for reimbursement of direct care hours for non-direct care hours performed by QIDPS." (SAC ¶ 21). It further alleges "Defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for non-direct care hours paid or approved by the Government." (*Id.* ¶ 23).

The FCA proscribes the knowing submission of false or fraudulent claims to the government for payment. *See* 31 U.S.C. § 3729(a)(1). To establish a claim under 31 U.S.C. § 3129(a)(1)(A), the relator must plead with sufficient particularity three elements: (1) a false claim (2) which the defendant presented or caused to be presented to

4

the United States for payment (3) knowing that the claim was false. *See Fowler v. Caremark RX, L.L.C.,* 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). To establish a claim under subsection 3729(a)(1)(B), the relator must plead with particularity three elements: (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false. *Id.* at 741. The principal difference between these two subsections is that subsection 3729(a)(1) requires the relators to allege the submission of a claim for payment. *Abner v. Jewish Hosp. Health Care Servs., Inc.*, No. 4:05-cv-0106-DFH-WGH, 2008 WL 3853361, at *5 (S.D. Ind. Aug. 13, 2008).

Res-Care argues the Relator's factual allegations fall short of the particularity requirement of Rule 9(b) because she does not provide the "who, what, when, where, and how" of the alleged fraud. The particularity requirement has been interpreted to require "at least one specific instance of wrongdoing that satisfies the who, what, where, when and how requirements of Rule 9(b)." *United States ex re. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 895 F. Supp. 2d 872, 878 (N.D. Ill. 2012) (citing *United States ex rel. Hebert v. Dizney*, 295 Fed. Appx. 717, 722-23 (5th Cir. 2008)). "Specifics are required in pleading fraud to 'assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.'" *Id.* (quoting *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). However, when details of the fraud itself "are within the defendant's exclusive knowledge," specificity requirements are less stringent. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Under those

5

circumstances, the complaint must plead the grounds for the plaintiff's suspicions of fraud. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992).

Relator generally alleges that Executive Director Breedlove instructed the QIDPs, including Relator, to falsely report non-direct care time as direct care time at a February 25, 2015 staff meeting. (SAC ¶ 13). She alleges that "other QIDPs" followed Breedlove's orders, and that these reports were "then submitted for Medica[id][1] reimbursement." (*Id.* ¶ 15). Relator maintains that additional facts constituting fraud, such as the names of the patients involved, the number of claims, and the dates they were submitted, are not accessible to her, and that she has specifically identified the grounds for her suspicions.

The court understands that as a QIDP, Relator would not have access to specific billing records. Thus, information relating to the invoices sent to Medicaid, the dates such invoices were submitted, the payments received by Res-Care, the number of non-direct care hours falsely reported as direct care hours, and the patients involved, would not be within her knowledge or control. However, one would expect her to have the ability to identify a QIDP who allegedly falsified his or her hours at least once. But on this basic issue, her allegations conflict. As noted above, she alleges that "other QIDPs reported this non-direct care time as direct care hours as ordered at the February 25, 2015 meeting by Ms. Breedlove, which was then submitted for Medica[id] reimbursement."

---

[1] The SAC alleges the false claims were submitted for Medicare reimbursement. The court presumes, given the other allegations of the SAC, that Plaintiff meant to use the term "Medicaid" rather than "Medicare."

6

(*Id.* ¶ 15). But in paragraph 19 of the SAC, she alleges that "[a]dditional QIDPs, such as Mr. Newness, who refused to submit to the same ultimatum, but did not voice their complaints to Defendant about these practices, were not terminated." (*Id.* ¶ 19). It is thus not clear which QIDP, if any, allegedly was involved in the submission of a false claim.

In addition, Relator fails to give other basic details which should be within her knowledge and control. For example, Relator fails to allege the manner in which a QIDP records her non-direct care and direct care hours, when she is required to submit those records, and to whom she submits those records. She also fails to identify who was responsible for submitting claims to Medicaid for reimbursement in the Evansville office and how often such claims were submitted in, for example, a given month. In the absence of allegations relating to the submission of at least one false claim, Relator's allegations fail to meet the particularity requirement of Rule 9(b). *See United States ex rel. Grenadyor*, 895 F. Supp. 2d at 879 (dismissing *qui tam* FCA claim in part because relator failed to specifically identify a single act of fraud); *United States ex rel. Grant v. Thorek Hosp.*, No. 04 C 8034, 2008 WL 1883454 at *3 (N.D. Ill. April 25, 2008) (dismissing *qui tam* FCA claim where complaint did not include any details regarding "the date on which any claim was submitted []; the content of any claim; the identification number of any claim; who submitted any false claim to the government; what amount of reimbursement improperly was claimed from the government; when or where those claims were submitted; or how any claims submitted were false"). Therefore, Res-Care's Motion to Dismiss Count I is **GRANTED**.

### 2. Count II, Conspiracy

Count II alleges that "Defendant, its authorized agents and representatives, and/or its employees conspired at the February 25, 2015 meeting and thereafter to defraud the Government of the United States . . . ." (SAC ¶ 26).

The FCA confers liability on those who "conspire[] to commit a violation of subparagraph (A), (B) . . . ." 31 U.S.C. § 3729(a)(1)(C). To plead a conspiracy claim, the relator must allege an agreement by two or more persons to accomplish a goal or goals and an act in furtherance of that agreement. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938-39 (7th Cir. 2012); *United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 898 (N.D. Ill. 2009); *United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, No. 06 C 06131, 2013 WL 870623, at *7 (N.D. Ill. March 7, 2013) ("Facts must be alleged to suggest the existence of an agreement to violate the law."). An alleged conspiracy to defraud is held to Rule 9(b)'s heightened pleading standards. *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 825 (N.D. Ill. 2013) (citing *DeLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)) (dismissing *quit tam* fraud claim where relator "fail[ed] to allege with specificity what they conspired to do, when, where, or how").

Here, Relator fails to allege who agreed with whom to violate subsections 3729 (a)(1)(A) and (B) of the FCA. She also fails to identify an act in furtherance of the conspiracy, including which QIDPs converted their non-direct care time to direct care hours, when they did it, who filed the allegedly false claims, the method by which it was filed, and the amount of payment. *United States ex rel. Walner v. NorthShore Univ.*

8

*Healthsystem*, 660 F.Supp.2d 891, 898 (N.D. Ill. 2009) (dismissing FCA claim where relator "fails to plead who agreed with whom, how they agreed, how they decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for"). Accordingly, the Relator's Count II does not meet the particularity requirements of Rule 9(b). Therefore, Res-Care's Motion to Dismiss Count II is **GRANTED**.

### 3. Count IV, Retaliation

In Count IV, Relator alleges Res-Care retaliated against her for engaging in protected conduct; that being, taking "action in furtherance of an enforcement action by repeatedly informing Defendant that reporting time for direct care that was not performed was unlawful and Medicaid fraud." (SAC ¶¶ 33-35). According to Res-Care, Plaintiff's claim is fatally deficient because it does not contain an allegation that she was contemplating pursuing an FCA enforcement action prior to her termination.

An action "in furtherance of an enforcement action" means putting one's employer on notice that it faces a "distinct possibility" of being subject to a *qui tam* action. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002) (holding that merely informing employer that its practices may violate Medicare billing regulations did not constitute protected activity); *see also Abner*, 2008 WL 3853361, at *8 ("By conducting their own investigation and by contacting federal officials in anticipation of litigation, the relators engaged in protected conduct."). "[S]imply informing one's employer that certain actions are 'illegal,' 'improper,' or 'fraudulent,' without any explicit mention of the possibility that the employee may sue, will not suffice

9

to show the Relator was acting in furtherance of an FCA enforcement action."[2] *United States ex rel. McGinnis v. OSF Healthcare Sys.*, 2014 WL 2960344, at *12 (citing *Brandon*, 277 F.3d at 944-45).

In this case, Relator alleges she informed Johnson and Gibson that Res-Care's actions violated Medicaid, but did not report to anyone prior to her termination that she was contemplating filing an FCA enforcement action. Therefore, as Res-Care correctly argues, Relator has failed to plead a claim of retaliation for undertaking "action in furtherance of an action." Accordingly, Res-Care's Motion to Dismiss Count IV is **GRANTED**.

    **B.**    **Count V, Sex Discrimination**

In Count V, Relator alleges she "was terminated for her refusal to report direct care hours based upon her gender." (SAC ¶ 40). Res-Care argues her allegations are too threadbare to state a plausible claim for relief.

To state a claim for sex discrimination, the complaint "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (affirming the minimal pleading standard for both race and sex discrimination). Relator alleges that both she and Newness were QIDPs, her work performance met or exceeded Res-Care's

---

[2] In 2009, Congress amended the statute to protect not only "actions in furtherance of an action under this section," but also "other efforts to stop 1 or more violations of this subchapter." *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847-48 (7th Cir. 2012). Because Relator's claim is limited only to "actions in furtherance of an action under this section," the court refrains from analyzing her claim based on "other efforts to stop" violations of the FCA.

legitimate expectations, that Relator and Newness refused to report direct care hours, and that she was terminated and he was not. (SAC ¶¶ 10, 13, 16, 40). Relator alleges that this difference in treatment is due to her gender. These allegations are sufficient under *Tamayo* to state a claim upon which relief can be granted. Accordingly, Res-Care's Motion to Dismiss Count V is **DENIED**.

### C. Count III, Wrongful Termination (Indiana law)

Lastly, Relator alleges that she was wrongfully terminated in violation of Indiana law for her refusal to report non-direct care hours as direct care hours. (*Id.* ¶ 29). Res-Care argues that because Relator fails to plead her fraud claim with sufficient particularity, her wrongful termination claim cannot survive a motion to dismiss.

In Indiana, "an at will employee allegedly fired for refusing to commit an illegal act for which [s]he would be personally liable may bring a cause of action for wrongful discharge." *McGarrity v. Berlin Metals, Inc.*, 774 N.E.2d 71, 76 (Ind. Ct. App. 2002); *see also McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind. 1988) (recognizing that an at-will employee allegedly fired for refusing to commit an unlawful act for which he would be personally liable has a cause of action for wrongful discharge). This cause of action is a narrow exception to the employment at-will doctrine. *Id.* Cases permitting actions under this exception "generally involv[e] plaintiffs allegedly terminated in retaliation for refusing to violate a legal obligation that carried penal consequences." *Meyers v. Meyers*, 861 N.E.2d 704, 707 (Ind. 2007). At the dismissal stage, a plaintiff need only allege that she was fired for refusing to commit an illegal act. A reference to a specific statute or regulation is not required. *See Haas Carriage, Inc. v.*

*Berna*, 651 N.E.2d 284, 288 (Ind. Ct. App. 1995) (analyzing plaintiff's *McClanahan* claim through a *post hoc* showing of the illegality of the refused conduct at the summary judgment stage); *Saunders v. Wesleyan Healthcare Operations Co., LLC*, No. 1:10-cv-384-TLS, 2011 WL 5386634, at *2 (N.D. Ind. Nov. 7, 2011) (finding plaintiff alleged a plausible *McClanahan* claim where she alleged that her refusal to give Mr. B's medication to Mr. A would have violated either federal drug laws or Indiana's criminal conversion statute).

In Count III, Relator alleges she was "terminated for her refusal to report non-direct care hours as direct care for which she could be personally liable and/or would be in violation of State and/or Federal guidelines, and this refusal was a factor in Defendant's decision to terminate [her]." (SAC ¶ 29). The court finds that, notwithstanding Relator's failure to specifically reference an Indiana or federal statute in her SAC, (and notwithstanding her failure to plausibly state a claim for fraud under the FCA), she plausibly alleges that she was fired for refusing to report her hours as requested by Res-Care, but that had she done so, she would have been subject to personal liability under state and/or federal guidelines. Accordingly, Res-Care's Motion to Dismiss Count III is **DENIED**.

## IV. Conclusion

For the reasons set forth above, Res-Care's Motion to Dismiss Relator's Second Amended Complaint (Filing No. 37) is **GRANTED** with respect to Counts I, II, and IV, and **DENIED** with respect to Counts III and V. Counts I, II and IV are dismissed without prejudice. Any amendment of the SAC is due on or before March 1, 2017.

**SO ORDERED** this 3rd day of February 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.